# NO. 23-1367

In The

# United States Court Of Appeals
# For The Fourth Circuit

## HANK BLAND; KENDELL JACKSON; LUETTA INNISS,

*Plaintiffs – Appellants,*

v.

## CAROLINA LEASE MANAGEMENT GROUP, LLC; CTH RENTALS, LLC; OLD HICKORY BUILDINGS, LLC,

*Defendants – Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT GREENVILLE

_____

## BRIEF OF APPELLANTS

_____

Charles M. Delbaum
NATIONAL CONSUMER
  LAW CENTER
7 Winthrop Square
4th Floor
Boston, MA  02110
(617) 226-0313

Adrian M. Lapas
LAPAS LAW OFFICES, PLLC
P.O. Box 10688
Goldsboro, NC  27532
(919) 583-5400

*Counsel for Appellants*

*Counsel for Appellants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __23-1367__      Caption: __Hank Bland et al v. Carolina Lease Management Group, LLC et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Hank Bland__
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO


2.      Does party/amicus have any parent corporations?      ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐YES ☑NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Adrian M. Lapas                      Date:        4/6/2023

Counsel for: Hank Bland

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-1367__        Caption: __Hank Bland et al v. Carolina Lease Management Group, LLC et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Kendall Jackson__
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation?                  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                  ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational
victim of the criminal activity and (2) if an organizational victim is a corporation, the
parent corporation and any publicly held corporation that owns 10% or more of the stock
of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Adrian M. Lapas                          Date:        4/6/2023

Counsel for: Kendall Jackson

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>23-1367</u>     Caption: <u>Hank Bland et al v. Carolina Lease Management Group, LLC et al</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Luetta Inniss</u>
(name of party/amicus)

_____

who is <u>appellant</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Adrian M. Lapas                               Date:        4/6/2023

Counsel for: Luetta Inniss

Print to PDF for Filing

## <u>TABLE OF CONTENTS</u>

**Page:**

TABLE OF AUTHORITIES ................................................................iii

I.     JURISDICTIONAL STATEMENT ..................................................... 1

II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW .............. 2

III.   STATEMENT OF THE CASE ............................................................ 3

    A.     STATEMENT OF THE FACTS ................................................. 3

    B.     PROCEDURAL HISTORY OF THE CASE ............................ 8

IV.    SUMMARY OF THE ARGUMENT ................................................13

V.     ARGUMENT .....................................................................................15

    A.     STANDARD OF REVIEW ......................................................15

    B.     PLAINTIFFS' CLAIMS THAT DEFENDANTS
        UNFAIRLY, DECEPTIVELY, KNOWINGLY AND
        WILLFULLY VIOLATED NORTH CAROLINA'S
        RETAIL INSTALLMENT SALES ACT ARE
        GOVERNED BY THE FOUR-YEAR STATUTE OF
        LIMITATIONS FOR UTPA CLAIMS AND ARE NOT
        BARRED EVEN IF PLAINTIFFS' CLAIMS UNDER
        THE RETAIL INSTALLMENT SALES ACT ARE
        UNTIMELY ............................................................................... 18

        1.     Introduction.................................................................... 18

        2.     The District Court Erred in Holding that
            Plaintiffs' UTPA Claims Are Barred Because the
            RISA Claims On Which the UTPA Claims Are
            Predicated in Part Are Barred By the RISA
            Statute of Limitations................................................... 23

i

3.   The District Court Erred in Holding that
     Plaintiffs' UTPA Claims Failed Because They
     Had Not Adequately Pled Knowing, Willful,
     Unfair or Deceptive Acts Separate and Distinct
     from Their RISA Claims and in Refusing to
     Reconsider the Judgment on this Basis......................31

        a.   Plaintiffs Plausibly Pled a Knowing and
             Willful RISA Violation.........................................37

        b.   Plaintiffs Also Adequately Pled Unfair and
             Deceptive Conduct ..............................................43

   C.   PLAINTIFFS' DEBT COLLECTION CLAIMS ARE
        NOT BARRED EVEN IF THEIR RISA CLAIMS ARE
        UNTIMELY ....................................................................46

VI.   CONCLUSION ...................................................................51

VII.  REQUEST FOR ORAL ARGUMENT ...........................52

CERTIFICATE OF COMPLIANCE .......................................53

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*,
    59 F.4th 948 (8th Cir. 2023) ........................................................ 36-37

*Appeal of North Carolina Forestry Foundation, Inc.*,
    296 N.C. 330, 250 S.E.2d 236 (1979) ........................................... 38

*Arista Recs. LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) .......................................................... 37

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......... 35, 37

*Avery v. City of Milwaukee*,
    847 F.3d 433 (7th Cir. 2017) ..................................................... 17, 33

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................... 36

*Brinkman v. Barrett Kays & Assocs., P.A.*,
    155 N.C. App. 738, 575 S.E.2d 40 (2003) ..................................... 27

*Conner v. Cleveland Cnty., North Carolina*,
    22 F.4th 412 (4th Cir. 2022) .......................................................... 35

*Corder v. Antero Resource Corporation*,
    57 F.4th 384 (4th Cir. 2023) ..................................................... 24, 36

*Crescent Foods, Inc. v. Evason Pharmacies, Inc.*,
    2016 WL 6270257 (N.C. Super., 2016) .......................................... 30

*Dellinger v. Pfizer, Inc.*,
    W.D.N.C. 2006 WL 2057654 (2006) .............................................. 29

iii

*DENC III v. Phila. Indem. Ins. Co.*,
    454 F. Supp. 3d 552 (M.D.N.C. 2020);
    32 F.4th 38 (2022) ............................................................... 38, 39, 41

*Dougherty v. Snyder*,
    621 Fed. Appx. 715 (C.A.3 (Pa.), 2015).................................... 17, 33

*Edmonson v. Eagle National Bank*,
    922 F.3d 535 (4th Cir. 2019) ......................................................... 16

*Financial Fiduciaries, LLC v. Gannett Co., Inc.*,
    46 F.4th 654 (7th Cir. 2022)..................................................... 17, 33

*Flexuspine, Inc. v. Globus Medical, Inc.*,
    879 F.3d 1369 (5th Cir. 2018) .................................................. 17, 34

*Fourth Corner Credit Union v. Federal Reserve Bank of Kansas City*,
    861 F.3d 1052 (10th Cir. 2017) ....................................................... 35

*Friday v. United Dominion Realty Trust*,
    155 N.C. App. 671, 575 S.E.2d 532 (2003) .................................... 47

*Gray v. N.C. Ins. Underwriting Ass'n*,
    352 N.C. 61, 529 S.E.2d 676 (2000) ......................................... 24, 43

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) ...............................................36, 37-38

*In re Mattox*,
    635 B.R. 444 (Bankr. E.D.N.C. 2021) ........................................... 45

*In re Pierce*,
    163 N.C. 247, 79 S.E. 507 (1913) .................................................. 39

*Johnson v. Phoenix Mut. Life Ins. Co.*,
    300 N.C. 247, 266 S.E.2d 610 (1980) ............................................ 43

*Marinkovic v. Hazelwood*,
    2022 WL 17663820 (6th Cir. 2022)........................................... 17, 34

*Media Network, Inc. v. Long Haymes Carr, Inc.*,
   197 N.C. App. 433, 678 S.E.2d 671 (2009) .................................... 24

*Mojtabai v. Mojtabai*,
   4 F.4th 77 (1st Cir. 2021) ....................................................16, 32-33

*Pacific Ins. Co. v. American Nat. Fire Ins. Co.*,
   148 F.3d 396 (4th Cir. 1998) ......................................................... 32

*Page v. Lexington Ins. Co.*,
   177 N.C. App. 246, 628 S.E.2d 427 (2017) ............................ *passim*

*Pierson v. Buyher,*
   330 N.C. 182, 409 S.E.2d 903 (1991) ............................................ 48

*Reg. v. N. Sun Hous. & Dev., Inc.*,
   No. 7:04-CV-68-FL, 2005 WL 8159532
   (E.D.N.C. Sept. 2, 2005), *aff'd sub nom.*,
   *Reg. v. Flagstar Bank*,
      205 F. App'x 154 (4th Cir. 2006)...................................... *passim*

*Robinson v. Wix Filtration Corp. LLC*,
   599 F.3d 403 (4th Cir. 2010) ......................................................... 16

*Skinner v. E. F. Hutton & Co.*,
   314 N.C. 267, 333 S.E.2d 236 (1985) ............................................ 27

*State ex rel. Cooper v. NCCS Loans, Inc.*,
   174 N.C. App. 630, 624 S.E.2d 371 (2005) .................................... 42

*State v. Williams,*
   226 N.C. App. 393, 741 S.E.2d 9 (2013) ....................................... 38

*Swan Island Club, Inc. v. Yarbrough,*
   209 F.2d 698 (4th Cir. 1954) ......................................................... 38

*United Laby's, Inc. v. Kuykendall,*
   102 N.C. App. 484, 403 S.E.2d 104 (1991) .................................... 39

*United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency,*
    912 F.3d 731 (4th Cir. 2019) ...................................................... 16, 34

*Vaughn v. Perea,*
    2021 WL 5879176 (4th Cir. 2021) .................................................... 37

*Volvo Financial Services v. Williamson,*
    910 F.3d 208 (5th Cir. 2018) ...................................................... 16, 33

*Williams v. HomEq Servicing Corp.,*
    184 N.C. App. 413, 646 S.E.2d 381 (2007) .................................... 49

*Winston Realty Co., Inc. v. G.H.G., Inc.,*
    314 N.C. 90, 331 S.E.2d 677 (1985) ................................................ 30

*Zuza v. Office of the High Representative,*
    857 F.3d 935, 429 U.S. App. D.C. 217 (D.C. Cir. 2017) ........... 17, 33

## Statutes:

28 U.S.C. § 1291 .......................................................................................... 1

28 U.S.C. § 1332(a) ...................................................................................... 1

N.C. Gen. Stat. § 1-52(2) ..................................................................... 21, 25

N.C. Gen. Stat. § 24-2.1(g) ........................................................................ 41

N.C. Gen. ch. 25A ............................................................................... 20, 37

N.C. Gen. Stat. § 25A-1 *et seq.* ......................................................... *passim*

N.C. Gen. Stat. § 25A-2(d) .................................................................. 40, 41

N.C. Gen. Stat. § 25A-8 ............................................................................... 5

N.C. Gen. Stat. § 25A-15 ........................................................................... 19

N.C. Gen. Stat. § 25A-44(1) ................................................................. 19, 20

N.C. Gen. Stat. § 25A-44(2) ................................................................. 19, 42

N.C. Gen. Stat. § 25A-44(4)........................................................20, 37

N.C. Gen. ch. 75........................................................................*passim*

N.C. Gen. Stat. § 75-1.1.............................................................*passim*

N.C. Gen. Stat. § 75-1.1(a) ...............................................................23

N.C. Gen. Stat. § 75-2.........................................................................46

N.C. Gen. Stat. § 75-4(4) ...................................................................48

N.C. Gen. Stat. § 75-16......................................................................23

N.C. Gen. Stat. § 75-16.2..........................................................*passim*

N.C. Gen. Stat. § 75-50(3) .................................................................47

N.C. Gen. Stat. § 75-54......................................................................47

N.C. Gen. Stat. § 75-54(4) .................................................................47

N.C. Gen. Stat. § 75-56(b) .................................................................49

N.C. Gen. Stat. § 95-47.1 ...................................................................30

**Rules:**

Fed. R. Civ. P. 9(b).................................................................16, 36, 37

Fed. R. Civ. P. 12(b)(6) .............................................................*passim*

Fed. R. Civ. P. 12(c) ...........................................................................34

Fed. R. Civ. P. 59......................................................................*passim*

Fed. R. Civ. P. 59(e) .................................................................*passim*

Fed. R. Civ. P. 60......................................................................*passim*

Fed. R. Civ. P. 60(b)...............................................................16, 22, 32

Fed. R. Civ. P. 60(b)(6) ....................................................... 17, 33

**Other Authorities:**

1 Noel L. Allen, NORTH CAROLINA UNFAIR BUSINESS PRACTICE
    § 19.01 *et seq*. (2022)........................................................ 43

5 Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV.
    § 1224 (4th ed.) ................................................................ 37

Noel L. Allen, 1 NORTH CAROLINA UNFAIR BUSINESS PRACTICE,
    § 1.03 n. 22 (2022) ........................................................... 25

Noel L. Allen, 1 NORTH CAROLINA UNFAIR BUSINESS PRACTICE,
    § 13.01 (2022)................................................................... 30

Sawchak, M, REFINING PER SE UNFAIR TRADE PRACTICES,
    92 N.C. L. Rev. 1881 (2014) ............................................ 23, 24-25

Session Laws 1983,
    H.B. 545, Chapter 686.................................................... 18

## I.    <u>JURISDICTIONAL STATEMENT</u>

Defendants timely removed this action to the District Court on April 8, 2022, based on diversity jurisdiction under 28 U.S.C. § 1332(a). The parties are completely diverse in that Plaintiffs are all citizens of North Carolina and Defendants are all citizens of Tennessee.  The amount in controversy between Plaintiff Bland and the Defendants exceeds $75,000.

On October 28, 2022, the District Court granted the Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and entered Judgment for Defendants.  Plaintiffs timely filed a Rule 59 motion to alter or amend the judgment and for reconsideration along with a Rule 60 motion for relief from judgment. The motions were denied by the District Court on March 30, 2023.  On March 31, 2023, Plaintiffs timely filed a Notice of Appeal from the Order granting Defendants' Motion to Dismiss and Judgment and the Order denying Plaintiffs' post-trial motions.  This Court has jurisdiction over a final decision of the district court pursuant to 28 U.S.C. § 1291.

## II.  STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Where Plaintiffs commenced this action within the four-year limitations period provided in UTPA, alleging violations of North Carolina's Retail Installment Sales Act ("RISA") and violations of North Carolina's Unfair Trade Practices Act ("UTPA") founded in part on the RISA violations, are the UTPA claims barred because the RISA were held to be untimely?

2.    Were Plaintiffs' allegations that Defendants not only violated the North Carolina Retail Installment Sales Act but did so knowingly, willfully, unfairly and deceptively sufficient to plausibly state a claim for violation of North Carolina's Unfair Trade Practices Act under Chapter 75 of the General Statutes?

3.    Where Plaintiffs alleged that less than four years prior to filing this action, Defendant Carolina Lease Management Group, LLC violated the North Carolina Debt Collection Act ("NCDCA") by collecting illegal finance charges under RISA and the Debt Collection Act provides that suit for alleged debt collection violations may be brought within four years of the cause of action's accrual, are Plaintiffs' debt collection claims barred because their RISA claims were found to be untimely?

2

III.  **STATEMENT OF THE CASE**

   A.    **STATEMENT OF THE FACTS**

In 2018, North Carolina residents Hank Bland, Kendell Jackson and Luetta Innis each separately sought to acquire a portable storage shed or similar structure from an Old Hickory dealer in North Carolina. JA105-110; JA143-165; First Amended Complaint ("FAC") ¶¶ 11-13;19-31.  Flyers and flags on the dealers' sales lots touted the availability of a "rent to own" option by which the sheds could be purchased.  JA106; FAC ¶ 24.

After viewing the inventory on each of the respective dealers' lots, each Plaintiff was either unable or unprepared to pay the requested cash price.  Each Plaintiff therefore elected to use the rent to own option that was being offered at each dealer.  JA106; FAC ¶ 23.  Plaintiff Bland agreed to purchase a shed at a cash price of $4,730.00 plus sales tax of 7% ($331.10) for a total cost of $5,061.10.  Plaintiff Jackson agreed to purchase a shed at a cash price of $6,000.75 plus sales tax of 7% ($420.05) for a total cost of $6,420.80.  Plaintiff Inniss agreed to purchase a shed at a cash price of $2,556.00 plus sales tax of 7%

3

($178.92) for a total cost of $2,734.92.  JA107-110; FAC ¶¶ 26-32;

JA143-165.

The rent to own transactions provided that the consumer is to pay

a required number of equal payments over the life of the transaction.

The rent to own agreements did not require any additional payments at

the end of the agreement term.  JA143-165; FAC, Exhibits A, B, and C.

After Plaintiffs make all of the required payments, Plaintiffs will then

own the property.  However, should a Plaintiff default on payment, the

property is subject to repossession.  JA143-165, FAC Exhibits A, B and

C.  Plaintiffs Bland and Inniss agreed to pay exactly double the cash

price over the 48-month term of their rent to own agreements.  JA144-

145; JA152-152.  Plaintiff Jackson agreed to pay $7.84 less than twice

the cash price over the 48-month term of his rent to own agreement.

JA144-145; JA152-153; JA160-161; FAC Exhibits A, B, and C.

The dealers printed the form agreements for each Plaintiff.

JA106-107; FAC ¶¶ 24, 25.  Each Plaintiff was provided and signed

similar standard form rent to own agreements with Defendant Carolina

Lease Management, LLC (hereinafter "CLMG").  JA107-109; FAC ¶¶

26-30.  Plaintiff Hank Bland signed his agreement on August 20, 2018,

4

Plaintiff Kendell Jackson signed his agreement on September 7, 2018, and Plaintiff Luetta Inniss signed her agreement on June 6, 2018. JA107-109; FAC ¶¶ 27-31.

The standard form rent to own agreements that Plaintiffs Bland and Jackson entered into were to purchase sheds at a retail cost that exceeded $3,000.00. JA144-157. These standard form agreements imposed finance charges that are more than twice the maximum rate permitted by North Carolina law for sales contracts in excess of $3,000. JA115; FAC ¶¶ 49, 96.[1] The agreement Plaintiff Inniss entered into is identical in form to that of Plaintiffs Bland and Jackson but is for a cash price less than $3,000. Plaintiff Inniss' same standard form agreement also has an unlawful finance charge but somewhat less than twice the maximum rate permitted by law for sales under $3,000. JA115; FAC ¶ 50.

For at least seven years prior to the filing of this action, as indicated by the revision date in the lower right hand of the rent to own agreements, Defendant CLMG, a Tennessee limited liability company,

---

[1] The "finance charge" is the difference between the "cash price" and the total amount paid under the terms of the agreements. N.C. Gen. Stat. § 25A-8(2021).

has used a standard form rent to own agreement with North Carolina residents that is substantially similar to the ones signed by Plaintiffs. JA114; JA119; JA145; JA153; JA161; FAC ¶¶ 14, 67, Exhibits A, B and C. For agreements like those of Plaintiffs Bland and Jackson, where the "cash price" of the property is $3,000.00 or more, Defendant CLMG imposes and collects finance charges at rates more than two times the 18% maximum rate authorized under North Carolina's RISA. JA119; FAC ¶ 68; JA128, FAC ¶ 98. For agreements where the cash price is less than $3,000.00, Defendant CLMG imposes and collects finance charges at rates exceeding the maximum rate authorized under North Carolina's RISA, but somewhat less than twice that maximum allowed rate. JA119; FAC ¶69.

CLMG has entered into hundreds if not thousands of "rent to own" agreements with North Carolina residents substantially similar to the ones it entered into with Plaintiffs. JA133; FAC ¶ 120. It routinely charges finance charges far beyond the maximum finance charge rates allowed under North Carolina's RISA even though those limits are unambiguous and apply to terminable rent to own agreements with North Carolina residents like the ones in this case. JA134; FAC ¶122.

In addition, these standard form agreements that Defendant
CLMG entered into with North Carolina residents at various North
Carolina locations uniformly contain a provision stating that the
agreements are not subject to North Carolina law. JA133-134; FAC
¶120. The agreements all provide that

> Consumer agrees that the laws of the State of Tennessee,
> the home state of the Lessor, shall govern this contract in all
> respects, and the Consumer further agrees to submit to the
> jurisdiction of the Courts of Tennessee, including but not
> necessarily limited to the Court of Lauderdale County,
> Tennessee, the site of the home office of the Lessor.

JA148; JA156; JA164; FAC Exhibits A-3, B-3, C-3, at ¶ 15.

Defendants CTH Rentals and Old Hickory Buildings are also
Tennessee limited liability companies. JA12; JA93-95; JA96-97; JA98-
99; JA104; FAC ¶¶ 15-16. All three Plaintiffs signed or initialed an Old
Hickory "work order" while at their local Old Hickory dealer's lot.
JA138; FAC ¶141; JA143; JA151; JA159. Almost immediately
thereafter, Plaintiffs signed or initialed a CTH Rentals "bill of sale" and
then signed or initialed a CLMG "rent-to-own" agreement setting forth

the details of the transaction.  JA138; FAC ¶141; JA144-145; JA152-153; JA160-161.[2]

CLMG engages, directly or indirectly, in debt collection from consumers.  JA136; FAC ¶133.  As alleged, at times Plaintiff Bland fell behind on his payments under his August 2018 rent to own agreement. JA115; FAC ¶ 51.  He, like many members of the putative class, were subject to collection efforts by CLMG, including collection calls, text messages demanding payment, and demand letters that contained a notice that the property he was purchasing may be subject to repossession.  JA116; FAC ¶ 54.  In these communications, CLMG demanded sums to which it was not entitled in that the agreement charged illegal finance charges. JA136; FAC ¶ 134.

## B.    PROCEDURAL HISTORY OF THE CASE

Plaintiffs Hank Bland and Kendell Jackson filed this putative class action in the Superior Court of Craven County, North Carolina on March 10, 2022.  JA33.  On April 8, 2022, Defendants removed the

---

[2] The three entities are alleged to have engaged in a joint venture and civil conspiracy.  The district court did not consider the merits of Old Hickory and CTH Rentals' Rule 12(b)(6) motions to dismiss these allegations because it dismissed all of Plaintiffs' claims as barred by the statute of limitations.

action to the United States District Court for the Eastern District of North Carolina based upon complete diversity of citizenship among the parties.  JA9.

Plaintiffs filed a First Amended Complaint ("FAC") as of right on May 5, 2022.  JA100.  The FAC added Luetta Inniss as a Plaintiff and alleged that the three named plaintiffs as well as hundreds if not thousands of North Carolina residents entered into standard form "rent to own" agreements by which they sought to purchase portable storage sheds sold by Defendants Old Hickory Buildings, LLC and CTH Rentals, LLC and financed by Defendant Carolina Lease Management, LLC.  JA106-110; JA113.

Plaintiffs Bland and Jackson contended that the agreements violated the North Carolina Retail Installment Sales Act ("RISA") by charging more than twice the allowed maximum finance charge and the agreements were therefore void under the terms of the Act.  JA123-124. Plaintiff Inniss contended that CLMG imposed upon her a finance charge rate far more than the maximum allowed rate but somewhat less than twice the allowed maximum rate.  JA124; JA131.  She sought

to recover the excess finance charges imposed upon her under her
agreement.  JA131.

Plaintiffs further contended that the Defendants' actions in
connection with the rent to own agreements and additional terms in the
agreements showed that Defendants had knowingly, willfully, unfairly
and deceptively violated RISA and therefore also the North Carolina
Unfair and Deceptive Trade Practices Act.  JA134.  Finally, Plaintiff
Bland alleged that Carolina Lease Management's attempts to collect on
his alleged debt violated the North Carolina Debt Collection Act.
JA136.

The named Plaintiffs had entered into separate rent to own
agreements with Carolina Lease Management on August 20, 2018,
September 9, 2018, and July 18, 2018.  JA105-106; JA143-149; JA151-
157; JA159-165.  All three of these transactions took place more than
three but less than four years before this action was commenced on
March 10, 2022.  JA33-37.

On May 19, 2022, Defendants filed a joint Motion to Dismiss
pursuant to Rule 12(b)(6), asserting as its sole basis for dismissal that
Plaintiffs' claims alleged in the FAC are barred by the relevant statutes

of limitations. JA173.[3] Without oral argument, the District Court granted Defendants' Joint Motion to Dismiss but not because it found that all of Plaintiffs' claims were time-barred. The District Court first found that Plaintiffs' RISA claims were governed by a three-year statute of limitations and thus Plaintiffs' RISA claims were untimely. The District Court then held that because Plaintiffs' Unfair Trade Practices Act and debt collection claims are based on the RISA violations it had found to be untimely, Plaintiffs' UTPA and debt collection claims are barred even though timely under the four-year limitations periods expressly provided for the UTPA and debt collection claims. This was the District Court's sole basis for dismissing Plaintiffs' UTPA and debt collection claims. JA175.

On November 23, 2022, Plaintiffs timely filed a Motion to Reopen and for reconsideration pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure. JA183. The District Court denied this motion

---

[3] At the same time, Defendant Old Hickory filed a separate Motion to Dismiss, arguing that the FAC also failed to state a claim against it on the merits of its participation in the alleged wrongs. The District Court denied Defendant Old Hickory's motion as moot because, as set forth below, it dismissed the case against all Defendants on the grounds discussed in this appeal. JA175.

on March 30, 2023.  JA186.  The District Court held that the new

authority Plaintiffs brought to its attention was "an argument which

was previously available which plaintiffs failed to raised[sic]."  JA189.

In fact, Plaintiffs had made the very same argument in opposing

Defendants' Motion to Dismiss but without citing a controlling North

Carolina state court decision it brought to the Court's attention in

support of Plaintiffs' post-trial motions.  The District Court also rejected

Plaintiffs' contention that the new authority demonstrated that the

Court had committed clear error. It found the new authority inapposite

on the ground that while the four-year statute of limitations for UTPA

may apply, Plaintiffs had failed to adequately allege a UTPA claim.

JA189.  This was an issue that had not been urged by Defendants nor

previously discussed by the Court in granting Defendants' Motion to

Dismiss and entering Judgment.  JA175; JA186; JA189-190; R DE#20,

p. 5-6; DE# 30, p. 12-13; DE#33.  According to the District Court in its

opinion denying Plaintiffs' Rules 59 and 60 motion, Plaintiffs had not

alleged any conduct separate and distinct from the RISA violation.

JA186.  The District Court also found that Plaintiffs had not stated any

new grounds for finding the four-year limitations period applicable

under North Carolina's Debt Collection Act and refused to reopen the
Judgment on that basis.

This appeal is from the District Court's Order Granting
Defendants' Motion to Dismiss and its Order denying Plaintiffs' Motion
to Reopen.  JA175; JA186.  Together, these are final orders and
judgment that dispose of all of the parties' claims.  The Notice of Appeal
was filed on March 31, 2023.  JA193.

## IV.   <u>SUMMARY OF THE ARGUMENT</u>

Plaintiffs' First Amended Complaint alleged that Defendants not
only violated North Carolina's Retail Installment Sales Act, but also
that Defendants committed unfair and deceptive practices and
knowingly and willfully violated RISA.  Further, Defendant CLMG
violated North Carolina's Debt Collection Act by demanding money to
which it was not entitled and by taking actions it was not entitled to
take.

Plaintiffs alleged that, in flagrant disregard of RISA's
prohibitions, Defendants uniformly charged more than twice the
maximum finance charge allowed by law in hundreds if not thousands
of rent to own agreements with North Carolina residents when the cash

13

price was $3,000 or more.  Defendants imposed finance charges of

nearly twice the maximum allowed rate when the cash price was less

than $3,000.  Defendants further tried to insulate these excessive

charges from attack by unfairly and deceptively including a choice of

law provision that not only is legally ineffective but contravenes

established North Carolina public policy.

Plaintiffs' claims under North Carolina's Unfair Trade Practices

Act and Debt Collection Act were indisputably brought within the four-

year limitations period prescribed by each statute.  The District Court

first erred in granting Defendants' Motion to Dismiss on the basis that

the UTPA claims are barred simply because the three-year period for

claims under RISA had expired by the time this action was commenced.

The expiration of the RISA limitations period merely rendered the RISA

claims unenforceable.  It did not make them invalid.

Plaintiffs had also alleged that CLMG violated the North Carolina

Debt Collection Act by collecting finance charges that are illegal under

RISA.  All of CLMG's debt collection activity took place within the four-

year period before this action was filed.  Plaintiffs' cause of action for

these debt collection violations did not accrue until the debt collection

occurred.  The debt collection claims are governed by Section 75-16.2 which explicitly allows suit within four years of the date the cause of action for a debt collection violation accrues.  The District Court erred in granting Defendants' Motion to Dismiss on the ground that, as with Plaintiffs' UTPA claims, the debt collection claims were barred because the three-year period for claims under RISA had expired by the time suit was filed.  JA175; JA186.

Subsequently, the District Court erred and abused its discretion in ruling that it had not committed clear legal error in holding that the expiration of the limitations period for Plaintiffs' RISA claims also barred Plaintiffs' UTPA claims and debt collection claims.  The District Court further erred and abused its discretion in holding that, even if the expiration of the RISA limitations period was not a bar to Plaintiffs' UTPA claims, Plaintiffs had not adequately pled that Defendants acted knowing and willfully, unfairly and deceptively.

## V.  ARGUMENT

### A.  STANDARD OF REVIEW

This Court reviews a district court's decision to grant a motion to dismiss pursuant to Rule 12(b)(6) *de novo*, including whether the

standard set forth in Fed. R. Civ. P 9(b) has been met. *Edmonson v. Eagle National Bank*, 922 F.3d 535, 545 (4th Cir. 2019).

Review of the denial of a Rule 59(e) or 60(b) motion normally is reviewed under the deferential abuse of discretion standard. *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 407 (4th Cir. 2010). Under this standard, "[a] district court abuses its discretion if it relies on an error of law or a clearly erroneous factual finding." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 912 F.3d 731, 735 (4th Cir. 2019) (internal quotation marks omitted).

Plaintiffs submit that the standard articulated in the *Oberg* decision recognizes that the Court of Appeals reviews issues of law decided in ruling on a Rule 59 or 60 motion *de novo*, as several other Circuit Courts of Appeal have explicitly held. *See, e.g., Mojtabai v. Mojtabai*, 4 F.4th 77, 83 (1st Cir. 2021)("We review a district court's denial of a Rule 59(e) motion "only for abuse of discretion," but, in doing so, we afford *de novo* review to issues of law"); *Volvo Financial Services v. Williamson*, 910 F.3d 208, 211 (5th Cir. 2018)(We review a district court's decision on a Rule 59(e) motion to alter or amend the judgment for abuse of discretion . . . . However, we review *de novo* issues that are

16

pure questions of law); *Financial Fiduciaries, LLC v. Gannett Co., Inc.*, 46 F.4th 654, 669 (7th Cir. 2022) ("We review Rule 59(e) rulings for an abuse of discretion, although 'embedded legal questions are reviewed *de novo.*'" *Avery v. City of Milwaukee*, 847 F.3d 433, 438 (7th Cir. 2017)); *Zuza v. Office of the High Representative*, 857 F.3d 935, 938, 429 U.S. App. D.C. 217, 220 (D.C. Cir. 2017)("Although we ordinarily review a Rule 59(e) motion's denial for abuse of discretion, our review is *de novo* when the district court considers and rejects a legal argument); *Dougherty v. Snyder*, 621 Fed. Appx. 715, 716 (C.A.3 (Pa.), 2015)("We review the denial of Rule 60(b)(6) and Rule 59(e) motions for abuse of discretion, though we review underlying legal issues *de novo.*") This approach is particularly appropriate when "the denial of a Rule 59(e) motion … involved reconsideration of a question of law, in which case the review is *de novo.*" *Flexuspine, Inc. v. Globus Medical, Inc.*, 879 F.3d 1369, 1373 (5th Cir. 2018) (citation omitted). *Accord, Marinkovic v. Hazelwood*, 2022 WL 17663820, at *2 (6th Cir. 2022). Plaintiffs urge this Court to adopt explicitly a similar standard of review of legal issues decided in ruling on a Rule 59 or Rule 60 motion.

17

**B.    PLAINTIFFS' CLAIMS THAT DEFENDANTS UNFAIRLY, DECEPTIVELY, KNOWINGLY AND WILLFULLY VIOLATED NORTH CAROLINA'S RETAIL INSTALLMENT SALES ACT ARE GOVERNED BY THE FOUR-YEAR STATUTE OF LIMITATIONS FOR UTPA CLAIMS AND ARE NOT BARRED EVEN IF PLAINTIFFS' CLAIMS UNDER THE RETAIL INSTALLMENT SALES ACT ARE UNTIMELY.**

### 1.    Introduction

Plaintiffs Hank Bland and Kendell Jackson commenced this action on behalf of themselves and hundreds of other North Carolina residents who entered into "rent to own" agreements with Defendants for the purchase of portable storage sheds.  Forty years ago,[4] North Carolina's General Assembly made a policy choice that for terminable bailment transactions, that is, "rent to own" transactions that a consumer can terminate at will, the transaction would be considered a consumer credit sale and not a lease unless the purchase option at the end of the lease requires payment of at least 10% of the residual value. Plaintiffs' rent to own agreements which require just equal monthly payments are properly deemed "consumer credit sales" agreements

---

[4] Session Laws 1983, H.B. 545, Chapter 686.

under North Carolina's Retail Installment Sales Act (RISA).  N.C. Gen. Stat. § 25A-1 *et seq.*

The finance charges imposed by the agreements at issue here were far beyond the maximum allowed rate permitted under RISA.  The finance charges imposed by the agreements, expressed as a percentage rate, exceed two times the maximum allowed rate for Plaintiffs Bland and Jackson.  N.C. Gen. Stat. §§ 25A-15; 25A-44(2)(2021).  Plaintiff Inniss, subsequently added as a Plaintiff in the First Amended Complaint, purchased a somewhat less expensive shed which allowed Defendants to charge slightly higher finance charges.  However, the finance charge in Plaintiff Inniss' rent to own agreement also substantially exceeded the allowed maximum rate but was just slightly less than two times that maximum.  N.C. Gen. Stat. §§ 25A-15; 25A-44(1)(2021).

Under RISA, an agreement that imposes a finance charge of more than two times the allowed maximum rate is "void" and the seller is not entitled to recover anything from the purchaser.  N.C. Gen. Stat. § 25A-44(2)(2021).  If an agreement imposes a finance charge greater than the allowed maximum amount but less than two times the allowed

maximum, the purchaser may recover up to two times the amount of any finance charge received by the seller plus reasonable attorney's fees incurred by the buyer.  N.C. Gen. Stat. § 25A-44(1)(2021).  RISA further provides that the "knowing and willful violation of any provision of this Chapter [25A] shall constitute an unfair trade practice under G.S. [§] 75-1.1" N.C. Gen. Stat. § 25A-44(4)(2021).

Plaintiffs alleged that Defendants not only violated RISA but also did so knowingly and willfully, unfairly and deceptively.  In support of this claim, Plaintiffs alleged that their agreements didn't just impose finance charges slightly more than the allowable rate, as might happen due to a clerical or other inadvertent error.  Rather, Plaintiffs alleged that Defendants charged more than twice the maximum 18% rate for Plaintiffs Bland and Jackson and almost twice the allowable 20% rate for Plaintiff Inniss.  Further, these overcharges were included in hundreds of similar rent to own agreements.  Plaintiffs also alleged that CLMG tried to insulate these RISA violations by including a choice of law provision that not only is ineffective but contravenes established North Carolina public policy.

Apart from UTPA, Plaintiffs alleged that Defendant CLMG engaged in unlawful debt collection activity regarding the debts incurred in these transactions. This collection activity, of course, took place after the transactions were entered into and even up to shortly before this action was filed. Plaintiff Bland asserted for himself and others that CLMG's debt collection activity violated the North Carolina debt collection statute in that CLMG attempted to collect illegal finance charges when consumers fell behind on their payments.

Plaintiffs' action was filed more than three but less than four years after the named Plaintiffs entered into their rent to own agreements. RISA does not specify a limitations period. In deciding Defendants' Motion to Dismiss, the District Court first held that under Section 1-52(2) of the General Statutes, an action for RISA violations must be commenced within three years.[5] That ruling is not under appeal. However and as explained further below, the District Court incorrectly held that because Plaintiffs' claims under both the North Carolina Unfair and Deceptive Trade Practices Act and North Carolina's debt collection statute are predicated in part on Defendants'

---

[5] N.C. Gen. Stat. § 1-52(2)(2021).

21

RISA violations, which the District Court deemed untimely, therefore

Plaintiffs' UTPA and debt collection claims are barred even though

those claims are well within the four year limitations period.  N.C. Gen.

Stat. § 75-16.2(2021).  The District Court thus conflated a finding that

the RISA claim was unenforceable with a finding that the RISA was

invalid.  The District Court did not consider the merits of the RISA

claim or the adequacy of the Plaintiffs' pleading of a UTPA claim.

JA175.

Following the District Court's grant of Defendants' Rule 12(b)(6)

motion, Plaintiffs filed a Motion to Reopen and for reconsideration

pursuant to Rule 59(e) and Rule 60(b).  In ruling on this motion, the

District Court erred in finding that Plaintiffs were presenting a new

argument when Plaintiffs cited to a North Carolina appellate decision,

*Page v. Lexington Ins. Co.*, 177 N.C. App. 246, 248, 628 S.E.2d 427, 428

(2017).  Plaintiffs, instead, were showing the District Court that

controlling North Carolina authority conflicts with its ruling and thus

demonstrated clear error justifying relief under Rule 59(e).  The District

Court had based its decision squarely on an unreported prior federal

court decision which held that if a claim is untimely, then a UTPA claim

22

that relies on similar conduct is also barred.  The *Page* decision from the

North Carolina Court of Appeals held to the contrary.  The District

Court then erroneously held that even if the *Page* decision were

controlling, Plaintiffs had not alleged any acts evidencing that

Defendants violated RISA knowingly, willfully, unfairly or deceptively.

JA189.  The District Court also found no reason to reconsider its

dismissal of the debt collection claims.  JA191.

> **2.    The District Court Erred in Holding that Plaintiffs' UTPA Claims Are Barred Because the RISA Claims On Which the UTPA Claims Are Predicated in Part Are Barred By the RISA Statute of Limitations.**

North Carolina's Chapter 75, commonly referred to as the North

Carolina Unfair Trade Practices Act or UTPA,[6] provides that "[u]nfair

methods of competition in or affecting commerce, and unfair or

deceptive acts or practices in or affecting commerce, are declared

unlawful."  N.C. Gen. Stat. § 75–1.1(a)(2021).  Further, N.C. Gen. Stat.

§ 75-16 (2021) creates a private cause of action for consumers to redress

---

[6] Chapter 75 of the North Carolina General Statutes is titled "Monopolies, Trusts and Consumer Protection" but the phrase "unfair trade practices" or "unfair [and] or deceptive trade practices" remain common in legal parlance today.  Sawchak, M, REFINING PER SE UNFAIR TRADE PRACTICES, 92 N.C. L. Rev. 1881 n 1 (2014).

injuries caused by violations of Chapter 75.  *See, e.g., Page v. Lexington Ins. Co.*, 177 N.C. App. 246, 248, 628 S.E.2d 427, 428 (2017).  Thus the North Carolina Supreme Court has held that "[i]n order to establish a violation of N.C.G.S. § 75–1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to [the] plaintiff [ ]."  *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000).  A UDTP claimant need not establish the defendant's bad faith or intent. *Media Network, Inc. v. Long Haymes Carr, Inc.*, 197 N.C. App. 433, 452, 678 S.E.2d 671, 683 (2009).  Because the District Court exercised diversity jurisdiction, North Carolina law applies on settled issues and if necessary, this Court will predict how the state's highest court would rule on an unsettled issue.  *Corder v. Antero Resources Corporation*, 57 F.4th 384, 392 (4th Cir. 2023).

In establishing an unfair or deceptive act or practice, a violation of a different statute or regulation can give rise to a *per se* violation of Chapter 75.  Explicit upgrading occurs when the source of law for a predicate violation specifically refers to N.C. Gen. Stat. § 75-1.1. Sawchak, M., REFINING PER SE UNFAIR TRADE PRACTICES, 92 N.C. L.

Rev. 1881, 1893 (2014); Noel L. Allen, 1 NORTH CAROLINA UNFAIR

BUSINESS PRACTICE, § 1.03 n. 22 (2022). Approximately 57 North

Carolina statutes, including North Carolina's Retail Installment Sales

Act, explicitly reference § 75-1.1. The statute of limitations applicable

to Section 75-1.1 claims is four years. N.C. Gen. Stat. § 75–16.2 (2021).

As noted above, this action was commenced more than three, but

less than four years after all of Plaintiffs' transactions. In granting

Defendants' motion to dismiss, the District Court first held that the

applicable limitations period was three years under N.C. Gen. Stat. § 1-

52(2). JA177. The District Court then held that:

> Because the NC RISA claims are barred, plaintiff's [sic]
> remaining claims also fail as they are each premised on
> defendants' alleged violation of NC RISA. *See Reg. v.
> N. Sun Hous. & Dev. , Inc.*, No. 7:04-CV-68-FL, 2005
> WL 8159532, at *10 (E.D.N.C. Sept. 2, 2005), aff'd sub
> nom. *Reg. v. Flagstar Bank*, 205 F. App'x 154 (4th Cir.
> 2006) (dismissing unfair and deceptive trade practice
> claim where premised solely on other claims which had
> been dismissed on merits or statute of limitations
> grounds).

JA178.

Plaintiffs submit that the unreported decision of *Reg. v. N. Sun

Hous. & Dev., Inc.*, which was the sole authority relied on by the

District Court, led the Court astray and that its reliance on the case

was misplaced. While the plaintiffs in *Register* had alleged RISA and

TILA violations as the basis for their Section 75-1.1 claim, the *Register*

plaintiffs had not alleged any additional unfair or deceptive acts. Nor

did the *Register* plaintiffs allege a "knowing and willful" violation of

RISA. The Truth in Lending Act (TILA) and RISA violations alleged in

*Register* were simply that "Defendants failed to include certain

information on the financing disclosure statement, pertaining to

additional costs of the loan transaction." *Register*, 2005 WL 8159532, at

\*6. Apparently, the *Register* plaintiffs claimed that any violation of

RISA and TILA was automatically a Section 75-1.1 claim.

The *Register* court therefore did not consider what is at issue in

this case: whether a claim under Section 75-1.1 is barred when

plaintiffs also allege unfair or deceptive conduct by the defendant or

where plaintiffs allege a knowing and willful violation of RISA. Rather,

the *Register* court held that since "plaintiffs' Unfair and Deceptive

Trade Practices Act claim against Defendants Equiplus and Flagstar is

based solely upon violations addressed in plaintiffs' other claims, which

the court has rejected on their merits or on the basis of statute of

limitations, the court finds plaintiffs' Unfair and Deceptive Trade

Practice Act claim meritless." *Id.* at *10. As to the statute of limitations, the Court thus conflated a decision on the merits with a procedural bar.

Importantly, the court in *Register* did not cite any North Carolina case for the holding it made and upon which the Court below relied: that a UTPA claim is barred if the limitations period on the underlying or predicate claim has expired. Indeed, no North Carolina case so holds. The *Register* court's analysis was flawed because it cited "two cases in North Carolina [that] have held that unfair trade practices claim could not be based upon violations of other federal statutes providing pervasive regulation of a particular area of law." *Reg.*, 2005 WL 8159532, at *10. However, the two cases cited by the *Register* court, *Skinner v. E. F. Hutton & Co.*, 314 N.C. 267, 275, 333 S.E.2d 236 (1985) and *Brinkman v. Barrett Kays & Assocs., P.A.*, 155 N.C. App. 738, 745, 575 S.E.2d 40 (2003), do not speak to the UTPA statute of limitations question at issue in this case. As the quote from *Register* indicates, these North Carolina cases addressed the question of what *substantive* claims are viable under UTPA. The question of when claims are *timely* was not at issue in either state court case cited by the

27

*Register* court.  As such, the *Register* court had no basis for assuming that, under North Carolina law, if the limitations period applicable to the underlying claim had expired, that would also bar a UTPA claim even though UTPA has a four-year limitations period.

There is a significant difference between finding a RISA claim unenforceable because the limitations period has expired and finding it invalid.  If a claim is valid -- and the District Court did not hold that Plaintiffs' RISA claims lack merit in granting Defendants' Motion to Dismiss -- then that claim can also be the basis for a UTPA claim even if it is time-barred.

Moreover, the North Carolina Court of Appeals has held exactly that.  In *Page v. Lexington Ins. Co.*, 177 N.C. App. 246, 628 S.E.2d 427 (2006), the court held that a UTPA claim that arises in the context of other related claims is not barred just because the limitations period on those other claims has expired.  *Id.* 177 N.C. App. at 251, 628 S.E.2d at 430.  In *Page*, plaintiff homeowners brought claims against their insurer for breach of contract, breach of fiduciary duty, and bad faith in connection with the insurer's settlement of their claim.  Plaintiffs also asserted a UTPA claim under a state statute describing and prohibiting

unfair claims settlement practices. Because all these claims arose more than three years prior to suit being filed, the *Page* court held that the first three claims were barred by the three-year statute of limitations applicable to such claims. The court first noted that "our Court has consistently treated UDTP claims as separate and distinct from other claims with respect to statutes of limitations." *Page*, 177 N.C. App. at 250, 628 S.E.2d at 430 (2017). The *Page* court then held that because plaintiffs had alleged conduct that was separate and distinct from plaintiffs' other claims on the underlying insurance policy – violation of a statutory duty governing fair settlement practices - the UDTP claim was governed by the four-year statute of limitations applicable to such claims. *Page,* 177 N.C. App. at 251, 628 S.E.2d at 430. In reaching this conclusion, the *Page* court noted that "the General Assembly is the policy-making body of the State of North Carolina" and specifically rejected the trial court's supposition that "it would be bad policy to allow a claim for UDTP to proceed when the claim on the underlying insurance policy was barred by the statute of limitations." *Id.* at 251, 628 S.E.2d at 430. *Accord*, *Dellinger v. Pfizer, Inc.*, W.D.N.C. 2006 WL 2057654 at *5 (2006)(section 75-1.1 claim not barred though underlying

breach of warranty claims time-barred). *See also*, Noel L. Allen, 1 NORTH CAROLINA UNFAIR BUSINESS PRACTICE, § 13.01 (2022). If the first three claims in *Page* had failed on the merits, then the UTPA claim might have been barred. But rejecting a claim on statutes of limitations grounds is not a merits determination. Thus, *Page* shows clearly that *Register* was wrongly decided and the District Court's reliance on it misplaced.

Decisions in other contexts also support Plaintiffs' contention that even if a state law may be unenforceable as lacking a private right of action, a transgression under the law is nevertheless actionable under UTPA. *Winston Realty Co., Inc. v. G.H.G., Inc.*, 314 N.C. 90, 97, 331 S.E.2d 677, 681 (1985)(discussing the Regulation of Private Personnel Services Act, Chapter 95-47.1, which has no private right of action). Likewise, time-barred affirmative claims may be used defensively or in recoupment. *Crescent Foods, Inc. v. Evason Pharmacies, Inc.*, 2016 WL 6270257, at *6 (N.C. Super., 2016)("a claim for recoupment is not subject to the otherwise applicable limitations period").

Unenforceability does not equate to invalidity nor carry the same consequences. The District Court erred in granting Defendants' Rule

12(b)(6) motion on the basis that if Plaintiffs' RISA claims are time-barred, their UDTPA claims necessarily also fail.

> **3.    The District Court Erred in Holding that Plaintiffs' UTPA Claims Failed Because They Had Not Adequately Pled Knowing, Willful, Unfair or Deceptive Acts Separate and Distinct from Their RISA Claims and in Refusing to Reconsider the Judgment on this Basis.**

In connection with Plaintiffs' Rule 59 and 60 motion to reopen and for reconsideration, Plaintiffs brought *Page v. Lexington Ins. Co.*, *supra*, to the District Court's attention.  Although recognizing that *Page* drew into question its reasoning in dismissing the case just because the RISA limitations period had expired, the District Court refused to reopen the dismissal of the UTPA claims for two reasons.  It stated, incorrectly, that *Page* was a new argument, when *Page* was simply new authority for the key argument Plaintiffs had made in responding to Defendants' Motion to Dismiss.  That argument was that UTPA is governed by its own statute of limitations, and no other, and that the Defendants' reliance on the *Register* decision was misplaced because the decision was not well-reasoned.  JA186; R DE#20, p. 5-6; DE# 30, p. 12-13; DE#33.  The *Page* case showed the Court that it had committed "a clear error of law" because its earlier holding was directly contrary to

31

controlling North Carolina authority.  The District Court should therefore have granted Plaintiffs' Rule 59(e) motion.  *See, Pacific Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)(recognizing as grounds "for amending an earlier judgment . . . (3) to correct a clear error of law or prevent manifest injustice").

The District Court then raised a new basis to justify its dismissal of the UTPA claims, one that had been not mentioned by Defendants in their Motion to Dismiss (which solely contended that Plaintiffs' claims were time-barred), and which had not been a basis for the District Court's dismissal order.  JA190.  The District Court held that Plaintiffs "have alleged no UDTP conduct that was separate and distinct from the underlying alleged NC RISA violations."  JA190.  However, it reached this conclusion summarily, without addressing or assessing any of the specific allegations in Plaintiffs' FAC, which are discussed immediately below.

The Court's ruling in denying Plaintiffs' Rule 59(e) and Rule 60(b) motion was an error of law no different than if it had originally ruled on these grounds in dismissing this action.  Therefore, this Court's standard of review should be *de novo*.  *See, e.g.*, *Mojtabai v. Mojtabai*, 4

32

F.4th 77, 83 (1st Cir. 2021)("We review a district court's denial of a Rule 59(e) motion "only for abuse of discretion," but, in doing so, we afford *de novo* review to issues of law"); *Volvo Financial Services v. Williamson*, 910 F.3d 208, 211 (5th Cir. 2018)(We review a district court's decision on a Rule 59(e) motion to alter or amend the judgment for abuse of discretion. . . . However, we review *de novo* issues that are pure questions of law); *Financial Fiduciaries, LLC v. Gannett Co., Inc.*, 46 F.4th 654, 669 (7th Cir. 2022)("We review Rule 59(e) rulings for an abuse of discretion, although 'embedded legal questions are reviewed *de novo*.' *Avery v. City of Milwaukee*, 847 F.3d 433, 438 (7th Cir. 2017)); *Zuza v. Office of the High Representative*, 857 F.3d 935, 938, 429 U.S. App. D.C. 217, 220 (D.C. Cir. 2017) ("Although we ordinarily review a Rule 59(e) motion's denial for abuse of discretion, our review is *de novo* when the district court considers and rejects a legal argument); *Dougherty v. Snyder*, 621 Fed. Appx. 715, 716 (C.A.3 (Pa.), 2015)("We review the denial of Rule 60(b)(6) and Rule 59(e) motions for abuse of discretion, though we review underlying legal issues *de novo*." This rule is particularly appropriate when "the denial of a Rule 59(e) motion . . . involved reconsideration of a question of law, in which case the review

is *de novo.*" *Flexuspine, Inc. v. Globus Medical, Inc.*, 879 F.3d 1369, 1373 (5th Cir. 2018) (citation omitted). *Accord*, *Marinkovic v. Hazelwood*, 2022 WL 17663820, at *2 (6th Cir. 2022).

Even under the abuse of discretion standard of review, the District Court's erroneous ruling of law should be reversed. *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 912 F.3d 731, 735 (4th Cir. 2019)(holding that "[a] district court abuses its discretion if it relies on an error of law or a clearly erroneous factual finding") (internal quotation marks omitted).

The standard for determining the adequacy of a complaint, whether in the context of a Rule 12(b)(6) motion or a motion for judgment on the pleadings, has recently been stated by this Court as follows:

> We review de novo a district court's order granting a motion for judgment on the pleadings under Rule 12(c), applying the same standard as for motions made pursuant to Rule 12(b)(6). In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." To survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" "A claim has facial plausibility" when it shows "more than a sheer possibility that a defendant has acted unlawfully." To be plausible, the complaint "need only give

34

the defendant fair notice of what the claim is and the
grounds on which it rests."

*Conner v. Cleveland Cnty., North Carolina*, 22 F.4th 412, 419–20 (4th

Cir. 2022)(internal citations omitted).

The adequacy of the allegations in a Complaint is a question of

law. *See, e.g.*, *Fourth Corner Credit Union v. Federal Reserve Bank of*

*Kansas City*, 861 F.3d 1052, 1077 (10th Cir. 2017)(holding that the

sufficiency of a complaint is a question of law, and that question of law

is not `fact-based.'); *Ashcroft v. Iqbal*, 556 U.S. 662, 674, 129 S. Ct. 1937,

173 L. Ed. 2d 868 (2009)("Evaluating the sufficiency of a complaint is

not a 'fact-based' question of law....").

A fair reading of Plaintiffs' allegations shows that Plaintiffs had

pled sufficient factual matter that, accepted as true, stated a claim to

relief under UTPA that is plausible on its face.  Perhaps for this reason,

Defendants had based their original Motion to Dismiss solely on the

ground that Plaintiffs' claims were untimely and not that Plaintiffs'

Amended Complaint failed to allege separate and distinct UTPA

conduct.  As noted above, the adequacy of the pleading had therefore

not been considered in connection with the proceedings on Defendants'

Motion to Dismiss.

The District Court did not articulate the standard pursuant to which it found Plaintiffs' allegations insufficient. In applying the plausibility test to allegations regarding the issues of deception, knowledge and willfulness, a court must bear in mind that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P., Rule 9(b); *Corder v. Antero Resource Corporation*, 57 F.4th 384, 401-02 (4th Cir. 2023) (Rule 9(b) standard relaxed when certain facts are peculiarly within the defendant's knowledge); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)("The second sentence of Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive.").  Likewise, pleading on information and belief is expressly contemplated by the Federal Rules of Civil Procedure.  Indeed, seven circuit courts have agreed that factual allegations pled on information and belief should not be summarily rejected under *Twombly* where "'the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'" *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th

Cir. 2023) (quoting *Arista Recs. LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) and collecting cases). *See also, Vaughn v. Perea*, 2021 WL 5879176 at *2 (4th Cir. 2021) (unpublished)(holding that "[p]leading on information and belief remains permissible, even following *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The practice "is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject." 5 Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV. § 1224 (4th ed.).

### a. Plaintiffs Plausibly Pled a Knowing and Willful RISA Violation.

The North Carolina Retail Installment Sales Act, by its own terms, states that a "knowing and willful violation of any provision of this Chapter [25A] shall constitute an unfair trade practice under G.S. [§] 75-1.1." N.C. Gen. Stat. § 25A-44(4)(2021). The Plaintiffs plausibly alleged a knowing and willful violation in their First Amended Complaint. JA100; JA134 FAC ¶¶ 120-123. The District Court apparently did not consider that "[t]he second sentence of Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." *Harrison v. Westinghouse*

*Savannah River Co.*, *supra* at 784.  Moreover, as this Court has recognized, "knowing" and "willful" conduct may often be inferred from the circumstances and do not present a high bar.

"The word 'knowingly' . . . . means that defendant knew what he was about to do, and, with such knowledge, proceeded to do the act charged."  *State v. Williams*, 226 N.C. App. 393, 399, 741 S.E.2d 9, 14, (2013)(citations and internal quotes omitted).  Both this Court and the North Carolina Supreme Court have explicitly held that "everyone is presumed to know the law."  *Swan Island Club, Inc. v. Yarbrough*, 209 F.2d 698, 702 (4th Cir. 1954); *Appeal of North Carolina Forestry Foundation, Inc.*, 296 N.C. 330, 342, 250 S.E.2d 236, 244 (1979).  As such, Plaintiffs plausibly pled that Defendants' acted knowingly when it imposed finance charges far in excess of the rates permitted under North Carolina's RISA in hundreds of rent to own agreements.

In *DENC, LLC v. Philadelphia Indemnity Insurance Company*, 32 F.4th 38 (2022), this Court analyzed the willfulness standard for North Carolina UTPA violations.  This Court upheld the district court finding that a UTPA violation was willful because the defendant acted

"intentionally and not accidentally or by mistake." This Court

explained that under North Carolina law,

> Conduct need not be "fraudulent, malicious, or grossly
> negligent to be willful" under the UDTPA. *DENC III*, 454 F.
> Supp. 3d at 565. It's enough that a party engaged in a
> deceptive trade practice intentionally, rather than by
> accident or mistake. *E.g., United Laby's, Inc. v. Kuykendall*,
> 102 N.C.App. 484, 403 S.E.2d 104, 111 (1991) (finding
> willfulness despite defendant's honest belief in deceptive
> practice); *see also In re Pierce*, 163 N.C. 247, 79 S.E. 507, 508
> (1913) ("Willful is used in contradistinction to accidental or
> unavoidably.").

*DENC, LLC v. Philadelphia Indemnity Insurance Company*, 32

F.4th 38, 54 (2022).

The FAC alleged that for many years, CLMG, in conjunction with

Defendants Old Hickory and CTH Rentals, had a practice of charging

hundreds if not thousands of North Carolina residents finance charges

far beyond the limits on finance charges in North Carolina's RISA --

frequently more than twice the allowed maximum amount -- even

though those limits are unambiguously set forth in North Carolina's

RISA. Defendants who do business in North Carolina are also

presumed to know that North Carolina law states that RISA applies to

terminable rent to own agreements with North Carolina residents like

the ones at issue in this case. Moreover, Defendants are presumed to

know that North Carolina law governs contracts with North Carolina buyers who solicit, negotiate and sign agreements in North Carolina. N.C. Gen. Stat. § 25A-2(d)(2021). It is a reasonable inference that Defendants' lengthy, pervasive and flagrantly illegal practice was not the result of a clerical or mathematical error and was not an inadvertent or unintentional mistake.

Further, North Carolina's RISA states clearly that a choice of law provision like the one inserted in Plaintiffs' agreements is ineffective. JA148; JA156; JA164. Section 25A-2(d) states:

> For the purposes of this Chapter, a consumer credit sale shall be deemed to have been made in this State, and therefore subject to the provisions of this Chapter, if the seller offers or agrees in this State to sell to a buyer who is a resident of this State, or if such buyer accepts or makes the offer in this State to buy, regardless of the situs of the contract as specified therein.
>
> Any solicitation or communication to sell, oral or written, originating outside of this State, but forwarded to and received in this State by a buyer who is a resident of this State, shall be deemed to be an offer or agreement to sell in this State.
>
> Any solicitation or communication to buy, oral or written, originating within this State, from a buyer who is a resident of this State, but forwarded to and received by a retail seller outside of this State, shall be deemed to be an acceptance or offer to buy in this State.

N.C. Gen. Stat. § 25A-2(d)(2021).

40

Under both the first and third paragraphs of § 25A-2(d), the rent to own agreements at issue here are deemed to have been made in North Carolina and governed by North Carolina law. Therefore, the limit on finance charges in North Carolina's RISA applies. Yet CLMG charged hundreds of North Carolina residents more than twice the maximum allowed rate. Based on the pervasiveness of this flagrant misconduct and the insertion of a choice of law provision mandating that not only does Tennessee law apply to the transaction but that Plaintiffs and consumers like Plaintiffs are also subjecting themselves to the jurisdiction of a court far from their home, Plaintiffs plausibly pled that Defendants' RISA violations were knowing and willful, rather than accidental. *DENC, LLC v. Philadelphia Indemnity Insurance Company, supra.*

North Carolina's usury statute states that "[i]t is the paramount public policy of North Carolina to protect North Carolina resident borrowers through the application of North Carolina interest laws." N.C. Gen. Stat. § 24-2.1(g). In a case involving usurious interest, a North Carolina Court of Appeals held that the practice of offering usurious loans violates this policy and that doing so "as a matter of law"

41

"constitutes unfair or deceptive trade practices, in violation of N.C. Gen. Stat. § 75–1.1(2003)". *State ex rel. Cooper v. NCCS Loans, Inc.*, 174 N.C. App. 630, 640-41, 624 S.E.2d 371, 378 (2005). Under North Carolina's RISA, if a transaction requires payment of more than two times the finance charge allowed under RISA, then the agreement, by statute, is "void". N.C. Gen. Stat. § 25A-44(2)(2021). The established public policy of the State is that a seller who violates § 25A-44(2) may not recover anything under the contract and the purchaser is allowed to retain the goods without liability. N.C. Gen. Stat. § 25A-44(2)(2021).

Plaintiffs submit that if usury is an unfair trade practice as a matter of law because excessive finance charges are contrary to public policy, by analogy, the rent to own agreements routinely utilized by Defendants that seek finance charges more than twice the maximum rate established under North Carolina law likewise constitute unfair trade practices as a matter of law.

Plaintiffs' FAC plausibly alleged conduct separate and distinct from the RISA violation sufficient to plausibly show a knowing and willful violation of RISA. The District Court erred as a matter of law in failing to apply controlling legal standards to the terms "knowing" and

42

"willful," and basing denial of Plaintiffs' Rule 59 and Rule 60 motion on its erroneous legal conclusion that Plaintiffs had not plausibly alleged that Defendants not only violated RISA, but that they did so knowingly, willfully, unfairly, and deceptively.  Even if an abuse of discretion standard applies here, which Plaintiffs contend it does not, that standard has been met and the District Court's order should be reversed and remanded.

### b.    Plaintiffs Also Adequately Pled Unfair and Deceptive Conduct.

The same factual allegations that show a knowing and willful also show unfair and deceptive conduct.  The North Carolina Supreme Court has held that "[a] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Gray v. North Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000).  A practice is deceptive if it has the tendency to deceive. *Id.*  In determining whether a representation is deceptive, its effect on the average consumer is considered.  *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 265-66, 266 S.E.2d 610, 622 (1980); 1 Noel L. Allen, NORTH CAROLINA UNFAIR BUSINESS PRACTICE § 19.01 *et seq*. (2022).

43

Oppressive, unscrupulous and conduct injurious to consumers was alleged here in that the standard form rent to own agreements utilized by Defendants charge not just illegal finance charges but at more than twice the maximum legal rate. A relatively minor excess charge would not necessarily be oppressive or unscrupulous but charging more than twice the legal rate most certainly is. It was also oppressive, unscrupulous and injurious to consumers, as well as deceptive, for Defendants to include in all of these agreements a provision stating that the agreements are not subject to North Carolina law. Specifically, the agreements uniformly state that "Consumer agrees that the laws of the State of Tennessee, the home state of the lessor, shall govern this contract in all respects." Because the finance charges are illegal under North Carolina law, but presumably not under Tennessee law, this provision wrongly implies that North Carolina consumers are without redress under North Carolina law for the excessive finance charges. Further, the provision states that Plaintiffs and others like them have subjected themselves to the jurisdiction of the Tennessee courts because of these agreements and that any dispute must be addressed in a court far from home.

Including such a provision in a RISA contract with Plaintiffs

herein as well as hundreds of other North Carolina consumers is not

only ineffective, as noted above, but also is contrary to the fundamental

policy of North Carolina.  In a case that like this one involved a rent to

own contract for a storage shed, the court held:

> The plain language of the [RISA] statute indicates that the
> North Carolina legislature did not intend for parties to be
> able to avoid RISA by including a choice of law provision into
> agreements.  The presence of this provision suggests to the
> court that *it would be against the fundamental policy of
> North Carolina* to allow contracting parties to opt-out of
> RISA through the use of a choice of law provision.
> Therefore, the court finds that the choice of law provision in
> the Rental Purchase Agreement is not enforceable and that
> North Carolina law governs the agreement.

*In re Mattox*, 635 B.R. 444, 449 (Bankr. E.D.N.C. 2021)(emphasis

added).

Plaintiffs, therefore, have plausibly alleged unfair and deceptive

conduct sufficient to withstand Defendants' Motion to Dismiss in that

the standard form rent to own agreements utilized by Defendants

herein with Plaintiffs herein and with hundreds of North Carolina

residents not only flagrantly violates RISA's finance charge limits and

public policy by charging more than twice the allowed rate, but also

contain a choice of law provision that likewise clearly violates public

policy.  For these reasons too, and as argued in the preceding section of this brief, the District Court erred as a matter of law in ruling that Plaintiffs had not plausibly alleged conduct separate and distinct from the RISA violation and abused its discretion in denying Plaintiffs' Rule 59 and Rule 60 motion.

### C. PLAINTIFFS' DEBT COLLECTION CLAIMS ARE NOT BARRED EVEN IF THEIR RISA CLAIMS ARE UNTIMELY.

The FAC alleged that Plaintiff Bland and many others who had entered into rent to own agreements for storage sheds with Defendants had at times fallen behind on their payments and had then been subjected to collection activity by Defendant CLMG.  The alleged collection activity included "collection calls, text messages demanding payment, demand letters sent to his address along with a notice that the Personal Property may be subject to repossession and/or a lawsuit seeking the recovery of the Personal Property."  JA116; FAC ¶¶ 54, 55. The FAC asserted that CLMG's collection efforts violated North Carolina's debt collection statute under Article Two, Chapter 75 of the General Statutes.  The debt collection statute prohibits a debt collector -

- including creditors who engage in debt collection[7] -- from collecting or attempting to collect a debt by any fraudulent, deceptive or misleading representation.  N.C. Gen. Stat. § 75-54.  JA136; FAC ¶ 131.  Debt collectors are specifically prohibited from "[f]alsely representing the character, extent, or amount of a debt against a consumer."  N.C. Gen. Stat. § 75-54(4)(2021).

Per the allegations in Plaintiffs' First Amended Complaint, taken as true, because the finance charges were more than twice the permissible rate, the agreements that Plaintiffs Bland and Jackson entered into with Defendant CLMG were void under North Carolina's RISA.  Similarly, though the agreement that Plaintiff Innis signed was not void under RISA, it nevertheless included illegal finance charges.  Therefore, every demand for payment made by CLMG was a demand for money that it was not entitled to receive.  Each demand was a false representation of the extent and amount of the alleged debt.  N.C. Gen. Stat. § 75-54(4); *Friday v. United Dominion Realty Trust*, 155 N.C. App. 671, 679, 575 S.E.2d 532, 537 (2003)(landlord's requests for payment of

---

[7] N.C. Gen. Stat. § 75-50(3)(2021).

47

late fees prohibited by law "could support a finding that Northwinds

violated G.S. § 75-4(4) by '[f]alsely representing the . . . amount of a

debt'").

The statute of limitations for claims under North Carolina's debt

collection act is "four years after the cause of action accrues." NC Gen.

Stat. § 75-16.2 (2021). "In general a cause or right of action accrues, so as

to start the running of the statute of limitations, as soon as the right to

institute and maintain a suit arises[.]" *Pierson v. Buyher,* 330 N.C. 182,

186, 409 S.E.2d 903, 905 (1991)(citation omitted). Debt collection claims

accrue only when debt collection activity occurs. Until there is an

attempt to collect, a debtor has no cause of action and no right to

institute a suit.

Relying on the *Register* decision discussed above, the District Court

nevertheless held that Plaintiffs' debt collection claims are barred

because the limitations period on their RISA claims had expired.

*Register* did not involve debt collection claims and as noted above, the

District Court conflated an unenforceable claim with a meritless one.

Moreover, the District Court misread both the North Carolina Debt

Collection Act and controlling precedent.

In *Williams v. HomEq Servicing Corp.*, 184 N.C. App. 413, 422,

646 S.E.2d 381, 387 (2007), a debt was incurred in 1996.  The court held

that the borrower's debt collection claims brought against the creditor

in 2005 were not time-barred because there was evidence of debt

collection violations after 2001 which was within the four-year statutory

period.  *See* N.C. Gen. Stat. § 75-56(b)(a penalty may be imposed for

*each* violation).  The date the debt is incurred is irrelevant.  Even so, the

alleged debt was incurred by Plaintiffs herein less than four years prior

to the commencement of this action.  All debt collection activity by

CLMG occurred within four years of the filing of this action and is

therefore actionable.  It is of no moment that Plaintiffs may not obtain

affirmative relief on their RISA claims due to the District Court's

determination that Plaintiffs' RISA claims had expired due to the three-

year limitation period.

Moreover, the District Court did not discuss nor analyze the

provision in § 75-16.2 allowing four years from the date of accrual of the

debt collection claim in either of its opinions.  Here too, its only

explanation of why Plaintiffs' debt collection claims are barred was its

invocation of the *Register* decision discussed above: "Because the NC RISA claims are barred, plaintiff's remaining claims also fail as they are each premised on Defendants' alleged violation of NC RISA." JA178. The District Court repeated its holding in denying Plaintiffs' Rule 59 and Rule 60 motion. JA190. Yet, in neither opinion did the District Court cite any North Carolina appellate decision or any other decision that so holds or that supports this ruling. Nor is there any. As such, the District Court's reliance on *Register* was misplaced.

The *Page* decision referencing UTPA claims shows that a cause of action which includes an underlying claim is not necessarily barred even if the underlying claim is untimely. If a debt collector were to seek to collect on a usurious debt, for example, there would be an actionable debt collection violation even if the limitations period for affirmative relief from the usurious debt had run.

Furthermore, the District Court's holdings regarding UTPA and debt collection are internally inconsistent. On the one hand, the District Court recognized in its second opinion that the four-year UTPA statute applies when Plaintiffs allege conduct "separate and distinct"

50

from a RISA violation, while on the other, in considering Plaintiffs' debt

collection claims, it disregarded the fact that Plaintiffs had alleged debt

collection activity, which is conduct that is separate and distinct from

the RISA violation.

Plaintiffs' debt collection claims are not barred simply because the

RISA violations on which they are predicated are untimely. Plaintiffs'

FAC should not have been dismissed for failure to state a North

Carolina debt collection claim. Further, the District Court committed

clear error and abused its discretion in refusing to reopen the case.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, the District Court erred in holding that

both Plaintiffs' UTPA and debt collection claims were barred simply

because their RISA claims were deemed untimely. Further, the District

Court erred and abused its discretion in holding that this case should

not be reopened on the grounds that Plaintiffs had failed to plausibly

plead a UTPA violation. The District Court's granting of Defendants'

Rule 12(b)(6) Motion to Dismiss and the Judgment for Defendant should

be reversed, and this case remanded for further proceedings.

## VII.  **REQUEST FOR ORAL ARGUMENT**

Plaintiffs respectfully request that this Court allow oral argument in this case.  The issues involving interpretation and analysis of state law in this diversity action have not been definitively resolved by either the North Carolina General Assembly or the North Carolina appellate courts.

*/s/ Adrian M. Lapas*
Adrian M. Lapas
N.C. State Bar No.:  20022
LAPAS LAW OFFICES, PLLC
Post Office Box 10688
Goldsboro, NC  27532
(919) 583-5400 – Telephone
(919) 882-1777 – Facsimile
adrian@lapaslaw.com

*/s/ Charles M. Delbaum*
Charles M. Delbaum
Mass. Bar No. 543225
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th Floor
Boston, MA 02110
(617) 226 0313 – Telephone
(617) 542-8028 – Facsimile
cdelbaum@nclc.org

*Counsel for Appellants*

52

## CERTIFICATE OF COMPLIANCE

1.   This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   this document contains <u>10,264</u> words.

2.   This document complies with the typeface requirements because:

   This document has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14-point Century Schoolbook</u>.

May 23, 2023                      Respectfully submitted,

<u>/s/ Adrian M. Lapas</u>              <u>/s/ Charles M. Delbaum</u>
Adrian M. Lapas                   Charles M. Delbaum
N.C. State Bar No.:  20022        Mass. Bar No. 543225
LAPAS LAW OFFICES, PLLC           NATIONAL CONSUMER LAW CENTER
Post Office Box 10688             7 Winthrop Square, 4th Floor
Goldsboro, NC  27532              Boston, MA 02110
(919) 583-5400 – Telephone        (617) 226 0313 – Telephone
(919) 882-1777 – Facsimile        (617) 542-8028 – Facsimile
adrian@lapaslaw.com               cdelbaum@nclc.org

   *Counsel for Appellants*

53